FRANK M. THOMPSON, APPELLANT, *v.* TOWN OF MAMAKATING, RESPONDENT.

*Town bonds — bonds issued beyond the amount assented to by the taxpayers are void —*
1866, *chap.* 398.

Pursuant to chapter 398 of 1866, bonds of the defendant to the amount of $175,000 were; in 1870, duly issued by commissioners appointed in the manner provided in that act. By mistake an additional bond for $1,000, numbered 405, was issued by the commissioners to one David, who, upon the demand of the commissioners, promised to return the same, but failed to do so. The bond was purchased by the plaintiff in 1879, in good faith and for value. At that time the coupons, then already due thereon, had been detached from it and were not given to the plaintiff, although none of them had ever been presented for payment. The coupons falling due from July, 1879, to January, 1883, were on the bond when purchased by the plaintiff, and the amounts thereof were paid to the plaintiff with money furnished by the supervisor of the town, but not from money raised by tax on said town for that purpose.

In this action, brought to recover the amount of two overdue coupons:

*Held,* that the commissioners had no authority to issue the bond; that the plaintiff was chargeable with notice of that fact, and that the bond was void in his hands.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

By chapter 398 of the Laws of 1866, the taxpayers of the town of Mamakating were authorized to consent to the issue of bonds of the town to aid in the construction of the New York and Oswego Midland Railroad, and to subscribe and take the capital stock of the company equal to the amount of bonds so authorized. Upon filing such consent in writing in the town and county clerk's office, duly acknowledged, in the form and manner prescribed for the acknowledgment of deeds, the commissioners appointed under the act were empowered to subscribe for the stock of the company, and to issue the bonds of the town to the amount fixed by such consents. Consents were filed pursuant to the act, fixing the amount at $175,000. The commissioners subscribed for the amount of stock authorized by the consents and issued the bonds of the town for an equal amount in payment therefor, the last of which were issued in November, 1870. These bonds being in different denominations and numbered, of which 404 was the highest number, were regu-

larly reported annually to the board of supervisors of the county, and a sufficient amount to pay the interest thereon semi-annnally was raised by a tax on the town, and the coupons from these bonds were regularly presented, paid and canceled each year. The bond in suit was issued in excess of the amount authorized by the consents, without any consideration therefor, and delivered to William David, who, immediately after receiving it, upon demand of the commissioners, agreed to surrender it for cancellation; but, instead thereof, fraudulently and unlawfully withheld and disposed of it. Up to the time it was [sold to the plaintiff, in January, 1879, the interest coupons were detached, but none of them were ever presented for payment, and neither the bond nor any of the coupons issued with it ever came to the knowledge of any of the officers of the town from the time David agreed to surrender it until after the plaintiff purchased it. The interest coupons for July, 1879, and up to and including the coupons for January, 1883, were paid to the plaintiff, but such coupons were paid from money furnished by the supervisor of said town during said period and not by money raised by a tax on said town for that purpose. At the annual town meeting, held soon after it was discovered that the bond was in existence, the town by a resolution protested against its payment. The court at the trial held that the bond was void, and directed that it should be surrendered and canceled. Judgment was entered accordingly, from which this appeal is taken.

*D. D. McKoon*, for the appellant.

*T. F. Brush*, for the respondent.

DYKMAN, J. :

The towns of this State have been, from their organization, much more than mere political subdivisions of territory. They have ever possessed some of the attributes of municipal corporations. They were corporations of a low grade with limited powers, and were not inappropriately termed *quasi* corporations, because they partook so far of their nature that the designation was employed to denote the resemblance. But from time to time, in later years, our legislature has invested the towns with powers beyond those of former times, until their character and capacity is now more akin to a municipal

402    THOMPSON v. TOWN OF MAMAKATING.

corporation than before.  They have been authorized to issue bonds and incur obligations, and, with the capacity has been imposed, the consequential liability for their payment and discharge; yet their powers are derivative and not inherent.  Their action must cease or be nugatory and ineffectual when they reach the limit of their delegated authority, and all persons dealing with them must take notice of the extent of their powers and ascertain, at their peril, that all the conditions requisite to their exercise have been observed and performed.

Obligations of towns have vitality and validity only to the extent of the capacity bestowed on the agents or officers through whom they act, and even in the hands of honest holders they cannot be enforced if there was no authority for their issuance.  The sole and only source of authority to issue such evidence of debt is the consent of the people ascertained and collected in the manner prescribed by the legislature.  Without such consent they are repugnant to the fundamental principles which control all contracts and are absolutely void.  (*People ex rel. D., ete., R. R. Co.,* v. *Batchellor,* 53 N. Y., 128.)

It must follow, therefore, that towns are liable and responsible on their obligations to the extent of such assent and no further, for beyond that they are not consensual and can have no binding force. It is far beyond the province of the legislature to enforce the making of contracts, either by individuals or corporations of any kind.

If, therefore, it turns out, on examination, that the bond in question in this action was issued without legislative authority, and without the assent of the town or the persons who assumed to represent and bind it, the plaintiff will be left without remedy, although she be an innocent holder for value, for the reason that there never was any authority for its issuance and it, therefore, never had any legal inception or life.

It is a fundamental principle of law that only authorized acts of an agent are binding on the principal.  There is a marked distinction between the apparent powers of an agent and his acts which seems to be under his power.  The apparent and manifest power of an agent are conferred by the terms of his appointment, and whatever he does under such authority is binding on his principal who is always bound by the appearance of such power.  But he is not

bound by the appearance of an act assumed to be within such powers, but which in reality is not. In all cases the authority must include the transaction.

These views are not in conflict with anything decided in the case of *New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 30), where it was decided that if the authority of the agent depends upon some fact outside the terms of his powers, and which rests within his knowledge, the principal is bound by his representations respecting the existence of such facts, though false in point of fact. Chapter 398 of the Laws of 1866 made it the duty of the county judge of Ulster county, on the written application of twelve freeholders of any town in that county, to appoint not more than three commissioners of such town to carry into effect the purposes of that law.

Then it was made lawful for such commissioners to borrow on the credit of such town such sum of money as the tax-paying inhabitants should fix upon by their assent in writing, or by votes, not exceeding thirty per cent of the valuation of the property, real and personal, of the town. Under and in pursuance of this statute the taxable inhabitants of the town of Mamakating fixed upon the sum of $175,000 as the sum to be raised and borrowed on the faith and credit of that town. Neither the regularity of the proceeding nor the constitutionality of the law are brought in question, and the commissioners issued bonds of the town to the amount authorized, of different denominations in regular numbers, the number of the last bond to make up the amount being 404. By some inadvertence the bond in question was issued and numbered 405, for $1,000. It was in excess of the amount authorized by the consent of the taxpayers, and was delivered by mistake.

The bond was purchased by the plaintiff for value, and the coupons were paid to her down to January, 1883, by the supervisor of the town. This action is for the recovery of two coupons attached to that bond for thirty-four dollars each, due July 1, 1883, and January 1, 1884, respectively, for interest. Within the principles already laid down this bond had no legal inception, because it was issued without authority of law. The power of the commissioners to issue bonds was restricted to the sum of $175,000, and was exhausted before this bond was made or issued. It had neither

commencement of days nor beginning of existence, and therefore the plaintiff cannot invoke the aid of that principle of law which imparts vitality to negotiable instruments in the hands of *bona fide* holders, as all the powers of the commissioners were conditional and they could make no bonds until the conditions were fulfilled.

Moreover, the bond bore on its face a reference to the law to which it owed its existence and so called on the plaintiff and all others proposing to buy it to ascertain whether it had validity and vitality under the provisions of the act. If good heed had been paid to the warning, the plaintiff would have found that the statute distinctly defined the power of the commissioners, and that they had been exhausted before the issuance of this bond, so that it was not embraced within their authority and was unauthorized and invalid. They were empowered to execute the consent of the taxpayers obtained in the manner prescribed by the statute, and could not act without it or in excess of it. That consent fixed the amount at $175,000, and all their action beyond that sum was a violation of the Constitution and the law, and was null and void. If the limitation prescribed by the consent be not effectual as a prohibition against an excessive issue, then the taxable inhabitants have but flimsy security, and their property is at the disposal of their appointed agents. If consent be the source of power and the measure of liability, as we have seen it is, then such results cannot ensue.

Something is claimed for the plaintiff, on the principle of ratification founded on the payment of interest on this bond, but the claim cannot be allowed. The power to confirm the bond did not reside with the officer who paid the interest, and he was not the agent of the town invested with authority to impart vitality to the obligation by recognition. The town can be rendered liable in no manner except that prescribed by the statute under which the commissioners acted, or by the collected will of the taxable inhabitants ascertained in the manner defined by law.

No view of the case will justify a recovery by the plaintiff, and the judgment should be affirmed, with costs.

BARNARD, P. J., concurred.

Judgment affirmed, with costs.